John K. Sherwood (JS 2453)
Sheila E. Carson (SC 2820)
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Attorneys for Debtors-in-Possession and Plaintiff*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br><br>PONDEROSA PINE ENERGY PARTNERS, LTD., *ET AL.*,[1]<br><br>DEBTORS. | CHAPTER 11<br><br>CASE NO. 05-21444 (NLW)<br>(JOINTLY ADMINISTERED) |
| PONDEROSA PINE ENERGY PARTNERS, LTD., DEBTOR-IN-POSSESSION,<br><br>PLAINTIFF,<br><br>V.<br><br>WILLIAMS POWER COMPANY, INC., F/K/A WILLIAMS ENERGY MARKETING & TRADING COMPANY, F/K/A WILLIAMS ENERGY DERIVATIVES & TRADING COMPANY,<br><br>DEFENDANT, | ADV. PROCEEDING NO. 05-_____<br><br><br>**VERIFIED COMPLAINT** |

Ponderosa Pine Energy Partners, Ltd., debtor-in-possession, the plaintiff in these proceedings ("Plaintiff" or "Debtor"), respectfully alleges as follows:

---

[1] The Debtors in these jointly administered chapter 11 proceedings are: Ponderosa Pine Energy Partners, Ltd., Ponderosa Pine Energy Texas Partners, Ltd., Ponderosa Pine Energy, Inc., Ponderosa Pine Energy, L.L.C., DPC Ponderosa L.L.C., Empeco VII-TX3, L.L.C., and IGC Brazos, L.L.C. (collectively the "Debtors").

## NATURE OF ACTION

1. This is an adversary proceeding seeking injunctive and declaratory relief to preserve a critical and valuable gas purchase agreement (the "GPA") between the Debtor and defendant Williams (as defined below). The GPA was entered into in 1994 and has served as one of the foundations of the Debtor's business since then. The Debtor, and/or its predecessor in interest, has fully performed under the GPA since 1994. On the heels of its Chapter 11 filing, the Debtor received a notice of termination of the GPA from Williams based solely on the fact that the Debtor filed for bankruptcy protection. The defendant has improperly relied on section 556 of the Bankruptcy Code as the basis to terminate the GPA claiming that section 365(e)(1) is not applicable to the GPA. The Debtor seeks, by this adversary proceeding, a declaratory judgment that the Defendant's alleged termination of the GPA is contrary to the terms of the GPA and prohibited by applicable bankruptcy law. In addition, because the termination of the GPA will cause the Debtor immediate and irreparable harm, the Debtor is seeking to preliminarily and permanently enjoin Williams from ceasing to perform under the GPA.

2. On an emergent basis, the Debtor requests preliminary injunctive relief in order to preserve the status quo, as well as this Court's jurisdiction over the matter before it, pending adjudication of the Debtor's claims on the merits. Because Williams has threatened to terminate the GPA as early as July 1, 2005, the Debtor requests temporary injunctive relief before that date.

3. In addition, because of the egregious nature of the defendant's disregard of clear contract terms and applicable bankruptcy law, the Debtor seeks sanctions, including costs and attorneys fees, for violating the automatic stay and any actual damages that may be awarded to the Debtor under the terms of the GPA and applicable law.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a) and the general order of the District Court for

2

New Jersey referring bankruptcy cases to bankruptcy judges in this district, the Bankruptcy Court may hear and determine this proceeding.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This adversary proceeding is brought in accordance with Fed. R. Bankr. P. 7001.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

7. In the event that any part of this adversary proceeding is found to be "non-core," the Debtor consents to the entry of final orders and judgments by this Court, pursuant to Fed. R. Bankr. P. 7008.

## THE PARTIES

8. The Debtor commenced its Chapter 11 proceedings on April 8, 2005 (the "Filing Date"). Subsequently, on April 14, 2005, six additional Debtors filed Chapter 11 petitions. Since then, the Debtors have operated their business and managed their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9. The Debtor is a successor-in-interest to Tenaska Gas Co. and Tenaska Power Partners, LP (collectively, "Tenaska") in their capacity as parties to the GPA with William Energy Derivatives and Trading Company dated May 13, 1994. A copy of the GPA is attached hereto as Exhibit "A".

10. Tenaska entered into the GPA with Williams Energy Derivatives and Trading Company. Upon information and belief, defendant Williams Power Company, Inc. ("Williams" or "Defendant") is a successor in interest to the rights and obligations of Williams Energy Derivatives and Trading Company under the GPA.

3

**ALLEGATIONS COMMON TO ALL COUNTS**

11. Pursuant to the GPA, Williams is obligated to sell and the Debtor is obligated to purchase natural gas for use at a cogeneration plant owned by the Debtor and located in Cleburne, Texas (the "Cogeneration Plant"), at fixed prices for a fixed period of time. Williams has been providing natural gas to the Cogeneration Plant since approximately 1997 pursuant to the GPA and the Debtor has been paying for the gas at the agreed upon prices.

12. At the time the GPA was entered into, the price of natural gas thereunder was negotiated in good faith and at arms' length.

13. The energy generated at the Cogeneration Plant is sold to Brazos Electric Power Cooperative, Inc. ("Brazos") pursuant to a Power Purchase Agreement dated as of November 1, 1993 (the "PPA").

14. Both the PPA and the GPA were entered into before construction of the Cogeneration Plant was even commenced. Indeed, the construction of the Cogeneration Plant was financed based in part on (i) the commitment of Brazos to buy electricity under the PPA and (ii) the commitment of Williams to supply natural gas to the Cogeneration Plant under the GPA.

15. Indeed, the reliance of the Debtor and its secured lenders led by JPMorgan Chase Bank, as agent ("Chase") upon the GPA and Williams' appreciation of that reliance is beyond question. Pursuant to a Consent and Agreement dated December 16, 1994 (the "Consent and Agreement," copy attached as Exhibit "B"), Williams acknowledged that the financing for the Cogeneration Plant was induced by its commitments under the GPA and specifically agreed, *inter alia*, that in the event that the secured lender was unable to cure a default under the GPA by virtue of the bankruptcy law, Williams would continue to perform under the GPA for 180 days. (*See* Sections 1.1 and 1.3 of the Consent and Agreement).

4

16. The term of the GPA expires December 31, 2006. Currently, the gas prices being paid by the Debtor under the GPA are substantially below the market rates. Thus, the Debtor's ability to buy natural gas from Williams under the terms and conditions of the GPA over the next eighteen (18) months is a critical and valuable component of the Debtor's reorganization efforts. Given the Debtor's current financial circumstances, the preservation of the GPA is key to its and the other Debtors' reorganization efforts.

17. On or about May 4, 2005, Williams issued a notice of termination of the GPA to the Debtor and others. A copy of the notice is attached hereto as Exhibit "C". Pursuant to this notice, Williams alleged that as a result of the Debtor's bankruptcy filing, the Debtor was in material breach of, or in default under, the GPA. The notice of termination referred to the GPA as a forward contract, as defined by 11 U.S.C. § 101(25), and indicated that "Williams is hereby exercising its right under 11 U.S.C. § 556 to terminate the [GPA]."

18. The foregoing notice indicated that Williams was giving the Debtor sixty (60) days notice of its intent to terminate the GPA. Thus, to the extent that Williams carries out its threatened termination, the termination presumably would be effective on or about July 1, 2005.

19. On or about June 17, 2005, Williams issued a letter to Chase stating that Chase would have an additional 30 days to cure the alleged default of the Debtor. However, Williams makes no reference to a similar extension to the Debtor. A copy of the June 17 letter is attached hereto as Exhibit "D".

20. Williams' threatened termination of the GPA will cause the Debtor and creditors of this estate irreparable harm because the Debtor will not be able to obtain natural gas from other sources at the favorable rates set forth in the GPA. Indeed, in the context of the motion by Brazos in this bankruptcy case to dismiss or transfer venue to Texas, the Debtor's financial expert, Michael J. Hamilton, stated that "Ponderosa's current cost of fuel is more than 50% below the current spot market price of gas, making these contracts [including the GPA] very profitable for both Ponderosa and Brazos." (Hamilton Declaration of May 2, 2005 at ¶15).

5

Agreeing with this position, Brazos' financial expert recognized that the Debtor had an "exceptional opportunity to increase net income through 2006 . . . attributable to the extraordinary value inherent in the gas supply contracts [including the GPA]." (Wilson Declaration of May 16, 2005 at ¶14). Thus, it is clear that despite Brazos' scorched earth approach vis-à-vis the Debtor in these proceedings, both Brazos and the Debtor agree that the loss of the GPA will cause immediate and irreparable harm to the Debtor's estate and its ability to reorganize.

21. On the other hand, the harm that may befall Williams if the GPA is not terminated is minimal. Williams will merely have to fulfill its obligations under a contract that has been in place for more than 10 years and receive its bargained for consideration.

22. Williams' notice of termination of the GPA is completely contrary of the negotiated terms of the Agreement as well as the provisions of the Bankruptcy Code cited above. Section 556 of the Bankruptcy Code does not apply to the GPA. Among other reasons, although section 556 authorizes a forward contract merchant who is a counter-party to a forward contract to exercise a pre-existing contractual right to liquidate a forward contract in a limited set of circumstances, it does not create an early right of termination. Since the GPA does not contain a liquidation provision as contemplated by section 556, Williams' attempt to exercise hypothetical rights under section 556 is unlawful because it is an attempt to terminate the GPA, deny the Debtor the benefit of its bargain, deny the Debtor any liquidation settlement payment and to exercise control over property of the estate in violation of the automatic stay. The GPA is not a "forward contract" and Williams is not a "forward contract merchant" as those teams are used in section 556 of the Bankruptcy Code.

23. Moreover, even if section 556 of the Bankruptcy Code did apply to the GPA, the statute only authorizes the remedy of "liquidation," not termination. The remedy of liquidation allows a party to a forward contract to sell its position into the market, or "mark to market." To the extent Williams has the right to liquidate the GPA under section 556 and asserts such right, it will owe the difference between the market price and the price fixed under the GPA

6

to the Debtor's bankruptcy estate.

24. Williams' threatened termination is also in violation of Article 18.1(a)(i) of the GPA which provides:

> a Party shall be in material breach or default under this Agreement, only if Seller, Buyer, Partnership or Tenaska: (i) fails to cure any material breach or default under this Agreement by such Party prior to the expiration of ninety (90) days … provided that in the event the Defaulting Party contests the action of the Terminating Party other than for failure to pay, the Terminating Party shall continue to perform until a final non-appealable decision is issued . . .

(Emphasis added).

25. The Debtor has invoked Article 18.1(a)(1) of the GPA, has contested Williams' attempt to terminate the GPA and has demanded that Williams continue to perform thereunder until a final, non-appealable decision concerning the issue of the Debtor's alleged breach has been rendered. See correspondence from Plaintiff to Williams attached hereto as Exhibit "E".

26. The sixty (60) day notice provided by Williams of its attempt to terminate the GPA was improper. Article 18.1 of the GPA requires that ninety (90) days notice be given to a party of breach or default.

## COUNT I
### (Injunctive Relief)

27. The Debtor repeats the allegations of the foregoing paragraphs as if set forth fully herein.

28. Section 105(a) of the Bankruptcy Code permits this Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Alternatively, this Court can issue injunctive relief pursuant to Fed. R. Bankr. P. 7065.

29. Injunctive relief against Williams with regard to the termination of the GPA is essential for the Debtor to have a reasonable opportunity to reorganize its affairs and to formulate and propose a confirmable plan of reorganization.

7

30. If Williams is permitted to terminate the GPA, the Debtor's prospects for successful reorganization will be severely prejudiced and the Debtor's estate will be deprived of an invaluable asset resulting in irreparable harm to this bankruptcy estate and the Debtor's creditors.

31. The harm that the Debtor and its creditors will suffer in the absence of injunctive relief outweighs by far any harm that Williams may suffer if injunctive relief is not granted. Indeed, Williams will receive an improper windfall if it is not prevented from terminating the GPA.

32. The injunctive relief requested herein will serve the public interest by furthering the Debtor's ability to successfully reorganize its business and maximize the value of the estate's assets for creditors.

33. To the extent Williams is allowed to terminate the GPA, the jurisdiction of this Court to hear and determine this matter will be impaired.

34. The Debtor has a substantial likelihood of success on the merits of the claims asserted herein. Among other things, Williams's reliance on section 556 of the Bankruptcy Code to "terminate" the contract is misplaced since the statute does not provide for termination as a remedy. Also, the GPA provides that as long as the Debtor has asserted a challenge to Williams' right to terminate, Williams must continue to perform until the request to terminate has been finally been resolved in the courts.

35. Pursuant to Article 18.1 of the GPA, since the Debtor has contested the attempt to terminate the GPA by Williams, said party is obligated to perform under the GPA until a final, non-appealable decision is issued. Thus, Williams is contractually obligated to continue to perform its obligations under the GPA.

36. Williams' attempted termination of the GPA is also in violation of section 1.3 of the Consent and Agreement.

37. By terminating the GPA without leave of this Court, Williams has violated provisions of the Bankruptcy Code including sections 362 and 365. Williams has willfully and

knowingly violated these laws and there are no compelling facts or circumstances which justify Williams' actions.

38.  The Debtor seeks to preserve the status quo pending a complete hearing on the merits of this case.

39.  Article 18.1 of the GPA requires that ninety (90) days notice be given to a party to cure default.  As set forth above, Williams has only provided the Debtor with sixty (60) days notice.  Thus, Williams does not have the contractual right to terminate the GPA since its purported notice was improper and contrary to the terms of the GPA.

WHEREFORE, the Plaintiff requests this Court to (i) enjoin the termination of the GPA by Williams or pending entry of a final, non-appealable decision with respect to the right of Williams to terminate the GPA and (ii) grant such other relief as the Court deems just, including costs and attorneys fees.

## COUNT II
### (Declaratory Judgment with respect to Section 556)

40.  The Debtor repeats the allegations of the foregoing paragraphs as if set forth fully herein.

41.  Under the facts and circumstances of this case, Williams is not permitted to terminate the GPA post-petition pursuant to section 556 of the Bankruptcy Code.

42.  Williams' notice of May 4, 2005 was not effective to terminate the Agreement under section 556 of the Bankruptcy Code, and to the extent Williams ceases to provide natural gas to the Plaintiff under the GPA on the basis of the Debtor's bankruptcy filing pursuant to section 556 of the Bankruptcy Code, the Court should declare that Williams is in breach of the GPA and has violated section 362 of the Bankruptcy Code.

WHEREFORE, the Plaintiff requests judgment declaring that (i) Williams does not have the right to terminate the GPA pursuant to section 556 of the Bankruptcy Code; (ii) preliminary and permanent injunction enjoining Williams from terminating the GPA; and (iii) granting such other relief as the Court deems just, including costs and attorneys fees.

## COUNT III

**(Declaratory Judgment with respect to Liquidation of the
Agreement and Judgment for Turnover of Estate Property)**

43. The Debtor repeats the allegations of the foregoing paragraphs as if set forth fully herein.

44. To the extent that this Court determines that Williams has the right to liquidate the GPA under the provisions of section 556 of the Bankruptcy Code, the proceeds of the liquidation of the GPA (i.e., the difference between the price of natural gas under the GPA and the market price), result in a substantial payment due from Williams to the Debtor in an amount to be determined. This amount is due immediately upon liquidation of the GPA under section 556 of the Bankruptcy Code.

45. The amount due to the Debtor upon liquidation of the GPA is property of the estate pursuant to section 541 of the Bankruptcy Code which must be turned over to the Debtor immediately pursuant to section 542 of the Bankruptcy Code.

WHEREFORE, should the events described above occur, the Debtor requests this Court to (i) enter judgment fixing the amount due to the Debtor upon liquidation of the GPA and directing Williams to turn over the liquidation proceeds to the Debtor and (ii) grant such other relief as the Court deems just, including costs and attorneys fees.

## COUNT IV

**(Breach of Contract)**

46. The Debtor repeats the allegations of the foregoing paragraphs as if fully set forth herein.

47. As set forth above, the attempt to terminate the GPA pursuant to section 556 of the Bankruptcy Code was a violation of the GPA, the Consent and Agreement, and of the provisions of section 365(e)(1) of the Bankruptcy Code.

48. Williams' attempted termination of the GPA, constitutes a breach of the GPA and the Consent and Agreement.

49. As a result of Williams' breach of the GPA, the Debtor has and will continue to suffer damages.

WHEREFORE, the Debtor requests judgment against Williams as follows: (i) specific performance of the GPA and the Consent and Agreement; (ii) compensatory and consequential damages; (iii) preliminary and permanent injunction enjoining Williams from terminating the GPA; and (iv) such other relief as the Court deems just, including costs and attorneys fees.

## COUNT V
### (Anticipatory Breach of Contract)

50. The Debtor repeats the allegations of the foregoing paragraphs as if set forth fully herein.

51. As is more fully described above, by informing the Debtor that it intends to terminate the GPA through the Notice of Termination, Williams has committed an anticipatory breach of the GPA and the Consent and Agreement.

WHEREFORE, the Debtor requests judgment against Williams as follows: (i) specific performance of the GPA and the Consent and Agreement; (ii) preliminary and permanent injunctive relief; (iii) compensatory and consequential damages; and (iv) such other relief as the Court deems just, including costs and attorneys fees.

## COUNT VI
### (Breach of the Covenant of Good Faith and Fair Dealing)

52. The Debtor repeats the allegations of the foregoing paragraphs as if set forth fully herein.

53. As is more fully described above, Williams' conduct constitutes a breach of the implied covenant of good faith and fair dealing.

WHEREFORE, the Debtor requests judgment against Williams as follows: (i) specific performance of the GPA and the Consent and Agreement; (ii) preliminary and permanent injunctive relief; (iii) compensatory and consequential damages; and (iv) such other relief as the court deems just, including costs and attorneys fees.

## COUNT VII

**(Violation of the Automatic Stay and Section 365 of the Bankruptcy Code)**

54. The Debtor repeats the allegations of the foregoing paragraphs as if set forth fully herein.

55. Williams' attempt to terminate the GPA was a willful violation of sections 362 and 365 of the Bankruptcy Code, showing contempt for the law and the powers of this Court.

56. As a result of the violation of sections 362 and 365 of the Bankruptcy Code, the Debtor has been forced to incur unnecessary legal fees and expenses and has incurred damage to its business and its prospects to reorganize.

WHEREFORE, the Debtor requests judgment against Williams for (i) contempt of court, sanctions, punitive damages and (ii) such other relief as the Court deems just, including costs and attorneys fees.

**LOWENSTEIN SANDLER PC**
*Attorneys for Debtors-in-Possession and Plaintiff*

By: */s/ Sheila E. Carson*
John K. Sherwood, Esq.
Sheila E. Carson, Esq.

**DATED**: June 21, 2005

## **VERIFICATION**

Richard G. Vicens, of full age, certifies as follows:

1. I am the Vice President of Ponderosa Pine Energy Partners, Ltd., Ponderosa Pine Energy Texas Partners Ltd., Empeco VII-TX3, L.L.C., IGC Brazos, L.L.C., Ponderosa Pine Energy, Inc., Ponderosa Pine Energy, LLC, and DPC Ponderosa LLC.

2. I have read the foregoing Verified Complaint and state that the factual statements contained herein are true and accurate to the best of my knowledge, information and belief.

3. To the extent allegations have been made upon information and belief, I believe those allegations to be true and accurate to the best of my knowledge, information and belief.

4. To the best of my knowledge, information and belief, the exhibits attached hereto are true and accurate copies of business records maintained by the Debtors.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                  */s/ Richard G. Vicens*
                                                  Richard G. Vicens
                                                  Vice President for Ponderosa Pine Energy Partners, Ltd., Ponderosa Pine Energy Texas Partners Ltd., Empeco VII-TX3, L.L.C., IGC Brazos, L.L.C., Ponderosa Pine Energy, Inc., Ponderosa Pine Energy, LLC, and DPC Ponderosa LLC